**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**CASE NO.: 1:25-cv-05437**

MEALMUSE CORP.,

                    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

                    Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, MealMuse Corp. ("MealMuse" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto[1] ("Defendant"), who are promoting, selling, offering for sale and distributing goods bearing or using infringements of Plaintiff's intellectual property within this district through various Internet based e-commerce stores using the seller identities as set forth on Schedule "A" hereto (the "Seller IDs")[2], and in support of its claims, alleges as follows:

---

[1] Since it is unknown when Plaintiff's forthcoming Ex Parte Motion for Entry of Temporary Restraining Order, including a Temporary Injunction, a Temporary Asset Restraint, Expedited Discovery, and Service of Process by Email will be ruled on, Plaintiff's name and intellectual property has been redacted to prevent Defendants from getting advanced notice. Plaintiff will file under seal an Unredacted Complaint which identifies Plaintiff and provides additional information and allegations once the record is unsealed.
[2] Schedule "A" to this Complaint was filed under seal pending the Court's ruling on Plaintiff's forthcoming Motion to for Leave to File Certain Documents Under Seal and to Temporarily Proceed Under a Pseudonym.

## SUMMARY OF THE ACTION

1.      Plaintiff MealMuse brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Illinois' Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.).

2.      Plaintiff MealMuse brings this action for willful design patent infringement under 35 U.S.C. § 271 committed in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented design, within the United States or for importation into the United States any patented design during the term of the patent-in-suit, and for all the remedies available under 35 U.S.C. §§ 283, 284, 285, and 289.

## SUBJECT MATTER JURISDICTION

3.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121.

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

6.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Illinois and this district, through at least the internet-based e-commerce stores accessible in Illinois and operating under their Seller IDs.

7. Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Illinois cause Plaintiff injury in Illinois, and Plaintiff's claims arise out of those activities.

8. Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## VENUE

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are not residents in the United States and therefore there is no district in which an action may otherwise be brought. Defendants are thus subject to the Court's personal jurisdiction.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

11. Venue is proper in this court pursuant to 28 U.S.C. §1400(b) because Defendants or their agents reside in this judicial district or have committed acts of infringement and have a regular and established place of business in this judicial district.

## THE PLAINTIFF

12. MealMuse is [REDACTED] with its principal place of business in [REDACTED]. MealMuse produces [REDACTED].

13. MealMuse started [REDACTED]. Along with the [REDACTED], MealMuse launched in [REDACTED], offering [REDACTED].

3

14.     In 2019, [REDACTED] was born as result of working with some of the world's most [REDACTED]. [REDACTED] meant industry professionals [REDACTED].

15.     Since its debut in 2019, [REDACTED] has swiftly become a [REDACTED].

16.     MealMuse's products are sold through [REDACTED], its own website at [REDACTED], and other authorized distributors, with authority to sell the products only under the same brand and packaging.

17.     MealMuse owns, as part of its IP Portfolio, the trademarks and design patent described below that are the subject of this action.

18.     Plaintiff offers for sale and sells its products within the state of Illinois, including this district, and throughout the United States.

19.     Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

20.     Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earns substantial profits in connection with the infringing conduct.

21.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff, expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

22.     The recent explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of

infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brand.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A.     PLAINTIFF'S TRADEMARK RIGHTS

23.      Plaintiff created and sells its high-quality [REDACTED] under the [REDACTED] federally registered trademarks: [REDACTED] (collectively the "MealMuse Marks").

24.      Plaintiff is the U.S. owner of all rights in and to the MealMuse Marks [REDACTED] for [REDACTED]  in International Class, [REDACTED].

25.      Plaintiff is the U.S. owner of all rights in and to the MealMuse Mark [REDACTED] for [REDACTED]  in International Class [REDACTED] [REDACTED] in International Class [REDACTED], based on its ownership of the [REDACTED]  Trademark Registrations [REDACTED].

[REDACTED]

26.      The MealMuse Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office. True and correct copies of the registrations are attached as **Composite Exhibit 1**. [3]

27.      The MealMuse Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality [REDACTED].

28.      The MealMuse Marks are Marks are displayed directly on top of Plaintiff's products and on the packaging and manuals used for selling the products. Shown below are the MealMuse Marks as they are used in connection with Plaintiff's products and its packaging.

---

[3] Omitted in initial filing. Plaintiff attached the Composite Exhibit 1 to the Unredacted Complaint.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

[REDACTED]

[REDACTED]

[REDACTED]

29.     The MealMuse Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for an extended period of time.

30.     The MealMuse Marks have been used by Plaintiff long prior in time to Defendants' use of copies of those trademarks.

31.     The MealMuse Marks have never been assigned or licensed to the Defendant.

32.     The MealMuse Marks are a symbol of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

33.     Plaintiff has carefully monitored and policed the use of the MealMuse Marks.

34.     The MealMuse Marks are well known and famous (as that term is used in 15 U.S.C. §1125(c)(1)) and have been for many years.

35.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the MealMuse Marks.

36.     Plaintiff has extensively used, advertised, and promoted the MealMuse Marks in the United States in association with the sale of high-quality [REDACTED].

37.     Plaintiff has spent substantial resources promoting the MealMuse Marks and products bearing or using the MealMuse Marks.

38.     In recent years, sales of products bearing or using the MealMuse Marks have exceeded thousands of dollars within the United States.

39.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the MealMuse Marks as being high-quality goods sponsored and approved by Plaintiff.

40.     Accordingly, the MealMuse Marks have achieved secondary meaning as identifiers of high-quality goods.

41.     Genuine high-quality [REDACTED] bearing or using the MealMuse Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

42.     Visibility on the Internet, particularly via Internet search engines such as [REDACTED] have become increasingly important to Plaintiff's overall marketing and consumer education efforts.

43.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

44.     Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the MealMuse Marks.

## B.     PLAINTIFF'S PATENT RIGHTS

45.     Plaintiff's [REDACTED] features are protected under a design patent and registered with the United States Patent and Trademark Office under [REDACTED]. A true and correct copy of the U.S. Design Patent Registration is attached hereto as **Exhibit 2** ([REDACTED]). [4]

---

[4] Omitted in initial filing. Plaintiff attached the Exhibit 2 to the Unredacted Complaint.

46.     Plaintiff's [REDACTED] relates to the [REDACTED], as substantially shown and described, in [REDACTED].

47.     Plaintiff's [REDACTED]  was registered on [REDACTED], has not expired, and is valid.

48.     Plaintiff has never granted authorization to anyone to import, make, use or sell unauthorized goods using Plaintiff's [REDACTED].

49.     At all times relevant, Plaintiff complied with the federal patent marking statute, 35 U.S.C. § 287(a).

## **DEFENDANTS**

50.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

51.     Defendants are individuals and/or business entities of unknown makeup, who either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

52.     Defendants are engaged in business in Illinois but have not appointed an agent for service of process.

53.     Upon information and belief, Defendants have registered, established or purchased, and maintained their e-commerce websites or Seller IDs.

54.     Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

55.     Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiff's intellectual property rights as described herein operating and using at least the e-commerce websites and Seller IDs.

56.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff.

57.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Illinois through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

58.     Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

59.     Upon information and belief, Defendants registered and maintained their e-commerce websites and Seller IDs for the sole purpose of engaging in illegal counterfeiting and infringing activities.

60.     Upon information and belief, Defendants will likely continue to register or acquire new e-commerce websites and seller identification aliases for the purpose of selling and offering for sale counterfeits and infringements of Plaintiff's intellectual property rights unless preliminarily and permanently enjoined.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

61.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

62.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants furthers their counterfeiting and infringement scheme and cause harm to Plaintiff.

63.     Defendants use individual seller store names containing the MealMuse Marks, and these store names are indexed on search engines and compete directly with Plaintiff for space in search results.

64.     The appearance of Defendants' individual seller stores in search engine results undermines Plaintiff's efforts to educate consumers about the value of patented products sold under the MealMuse Marks and the [REDACTED].

65.     Defendants are using counterfeits and infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

66.     Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Illinois and causing Plaintiff harm and damage within this jurisdiction.

67.     The natural and intended by product of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

68.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

**<u>JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER</u>**

69.     Defendants are the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto.

70.     Defendants are promoting, selling, offering for sale and distributing goods bearing or using counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district.

71.     Defendants are working together to promote, sell, offer for sale, and distribute their Counterfeit Goods via the e-commerce stores listed on Schedule "A" hereto. Defendants number 1 and 2 listed on Schedule "A" share a common address and phone number in [REDACTED], and all three e-commerce stores reference Defendant number 2, [REDACTED] as either the seller or manufacturer of the Counterfeit Goods, as can be seen below:

**<u>Doe 1 Product Packaging Front:</u>**          **<u>Label on Product Packaging Back:</u>**

[REDACTED]                                              [REDACTED]

**<u>Doe 2 E-commerce Store, Listing [REDACTED] Infringing Product:</u>**

[REDACTED]

**<u>Doe 2 E-commerce Store, "Contact Us":</u>**

[REDACTED]

**<u>Doe 3 E-Commerce Store, "Where to Buy":</u>**

[REDACTED]

72.     The product offered for sale in Doe number 1's listing contains the federally registered trademark [REDACTED]. The owner of the trademark is Defendant number 3 listed

on Schedule "A," [REDACTED].[5] The specimen filed by [REDACTED] on [REDACTED] in support of its Declaration of Use with the USPTO is an image of Defendants' Counterfeit Good which infringes Plaintiff's MealMuse Marks and the [REDACTED], and is the same product offered for sale by Doe 1, as shown below.

**DOE 3 SPECIMEN:**

[REDACTED]

**DOE 1 PRODUCT:**

[REDACTED]

73.     Plaintiff made a test purchase from Defendant numbered 1 listed on Schedule "A" attached hereto. The test purchase received contained a label that lists Defendant number 2 as the manufacturer of the product, and displays Defendant number 3's e-commerce site, all of which further establish a logical relationship between all Defendants:

[REDACTED]

74.     Upon information and belief, one or more of the Defendants listed on Schedule "A" attached hereto is a shell company, agent, and/or alter ego of the other Defendants listed on Schedule "A."

75.     All Defendants promote, sell, and offer to sell, the same [REDACTED] product that infringes Plaintiff's trademarks and design patent, as shown below:

**Defendant number 1 product:**

[REDACTED]

**Defendant number 2 product:**

[REDACTED]

**Defendant number 3 product:**

[REDACTED]

---

[5] See Federal Trademark Registration No. [REDACTED], registration date [REDACTED].

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

76. Joinder of all Defendants is also permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all Defendants will arise in the action.

77. Joinder of the multiple Defendants listed in Schedule "A" attached hereto is permitted because Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

78. Joinder of the multiple Defendants listed in Schedule "A" attached hereto serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court.

79. Joinder of the multiple Defendants listed in Schedule "A" attached hereto will not create any unnecessary delay nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike.

80. Joinder of the multiple Defendants listed in Schedule "A" is procedural only and does not affect the substantive rights of any Defendant listed on Schedule "A" hereto.

81. This Court has jurisdiction over the multiple Defendants listed in Schedule "A" hereto. Venue is proper in this Court for this dispute involving the multiple Defendants listed in Schedule "A" hereto.

82. Plaintiff's claims against the multiple Defendants listed in Schedule "A" are all transactionally related.

83. Plaintiff is claiming counterfeiting and infringement against Defendants of Plaintiff's intellectual property rights.

84. The actions of all Defendants cause indivisible harm to Plaintiff by Defendants' combined actions engaging in similar counterfeiting and infringing conduct when each is compared to the others.

85. All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

86. All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their counterfeiting and infringing activities.

87. All Defendants can easily and quickly transfer or conceal their funds in their payment and financial accounts to avoid detection and liability in the event that the Plaintiff's anti-counterfeiting and anti-pirating efforts are discovered, or Plaintiff obtains a monetary award.

88. All Defendants violated one or more of the Plaintiff's intellectual property rights in the United States by the use of common or identical methods.

89. Defendants are using counterfeits and infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

90. Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Illinois and causing Plaintiff harm and damage within this jurisdiction.

91.     The natural and intended by product of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

92.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## DEFENDANTS' INFRINGING ACTIVITIES

93.     Defendants are promoting, advertising, distributing, selling, and/or offering for sale knock offs of Plaintiff's high-quality [REDACTED] in interstate commerce that are counterfeits and infringements of Plaintiff's intellectual property rights (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

94.     Defendants' counterfeit [REDACTED] reproduce the main [REDACTED]. For additional reference, shown below is a sample of Defendants' counterfeiting and infringing products and their packaging, where one or more of the MealMuse Marks are also displayed without authorization:

**Doe No. 1**

[REDACTED]

[REDACTED]

[REDACTED]

95.     Specifically, Defendants are using at least one of the MealMuse Marks to initially attract online customers and drive them to Defendants' e-commerce stores.

96.     Defendants are using identical or confusingly similar marks to one or more of the MealMuse Marks and the [REDACTED] different quality goods.

97.     Plaintiff has used the MealMuse Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

98.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods.

99.     Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality [REDACTED] offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the MealMuse Marks and the [REDACTED].

100.    Defendants' counterfeit products reproduce the main design features of the [REDACTED], as is shown in the Claim Chart attached hereto as **Exhibit 3**. [6]

101.    The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale on Defendants' e-commerce stores are genuine goods originating from, associated with, and approved by Plaintiff.

102.    Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

103.    In so advertising their stores and products, Defendants improperly and unlawfully use the MealMuse Marks and the [REDACTED] without Plaintiff's permission.

---

[6] Omitted in initial filing. Plaintiff attached the Composite Exhibit 3 to the Unredacted Complaint.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

104.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of one or more of the MealMuse Marks and the [REDACTED].

105.     Specifically, Defendants are using counterfeits and infringements of one or more of the MealMuse Marks in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

106.     By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

107.     Defendants are causing individual, concurrent, and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Plaintiff's business and its intellectual property assets, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

108.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

109.     As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

110.    Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the MealMuse Marks and the [REDACTED], including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

111.    Defendants' use of the MealMuse Marks the [REDACTED], including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

112.    Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.

113.    If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

114.    Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

115.    Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

116.    Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting and infringing, and their unfairly competitive activities connected to their Seller IDs and any other alias, e-commerce stores, or seller identification names being used and/or controlled by them.

117. Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

118. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and its wrongful use of Plaintiff's intellectual property rights.

119. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

120. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

121. Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

122. Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's trademarks and design patent.

123. Plaintiff has no adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

124. Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

125. This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of one or more of the MealMuse Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

126.    Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the MealMuse Marks.

127.    Defendants are continuously infringing and inducing others to infringe one or more of the MealMuse Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

128.    Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

129.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

130.    Defendants' above-described illegal actions constitute counterfeiting and infringement of one or more of the MealMuse Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

131.    Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

132.    If not preliminary and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

133.    Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

134.    Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the MealMuse Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

135.    Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the MealMuse Marks are virtually identical in appearance to Plaintiff's genuine goods.

136.    Defendants' Counterfeit Goods are different in quality from Plaintiff's goods and are of much lower quality.

137.    Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

138.    Defendant, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

139.    Defendants have authorized infringing uses of one or more of the MealMuse Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

140.    Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

141.    Defendants are using counterfeits and infringements of one or more of the MealMuse Marks in order to unfairly compete with Plaintiff and others for space within organic

search engine results and social media results, thereby depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

142.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

143.     Plaintiff has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

144.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III – VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

### (815 ILCS § 510, et seq.)

145.     Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

146.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiff, causing a likelihood of confusion as to the source of their goods, causing a likelihood of confusion as to an affiliation, connection, or association with genuine Plaintiff's products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion among the public.

147.     The foregoing acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

148.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and associated goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

149.     Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

150.      This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing or using one or more of the MealMuse Marks.

151.     Plaintiff is the owner of all common law rights in and to the MealMuse Marks.

152.     Defendant, upon information and belief, is promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing or using infringements of the one or more of the MealMuse Marks.

153.     Defendants' infringing activities are likely to cause and, are actually causing, confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing or using one or more of the MealMuse Marks.

154.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

### COUNT VI – PATENT INFRINGEMENT

155.     Plaintiff incorporates the allegations of paragraphs 1 through 123 of this Complaint as if fully set forth herein.

156.    Plaintiff owns all right, title, and interests in, and/or has standing to sue for infringement of [REDACTED] entitled [REDACTED] claiming the [REDACTED].

157.    Defendants have infringed and continues to infringe the [REDACTED] either directly or indirectly through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271, by making, using, selling, importing and/or offering to sell infringing products, namely the infringing and counterfeit products sold under one or more of the MealMuse Marks.

158.    Defendants' infringing and counterfeit products sold under one or more of the MealMuse Marks are the same in all material respects.

159.    Defendants' disregard for Plaintiff's patent rights similarly threatens Plaintiff's relationship with potential licensees of these patents.

160.    Defendants will derive a competitive advantage from using Plaintiff's patented design without paying compensation for such use.

161.    Defendants' infringement, contributory infringement and/or inducement to infringe has injured Plaintiff and is, therefore, entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

162.    Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendants have notice of or knew of the [REDACTED] and has nonetheless injured and will continue to injure Plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products that come within the scope of the [REDACTED].

WHEREFORE, Plaintiff demands judgment on all Counts of this Amended Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 35 U.S.C. §§ 271 and 283 and Federal Rule of Civil Procedure 65 enjoining Defendant, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the MealMuse Marks; from using the MealMuse Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendant, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the MealMuse Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

B.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and infringements of one or more of the MealMuse Marks and the [REDACTED].

C.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing or using counterfeits and infringements of one or more of the MealMuse Marks and the [REDACTED].

D.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

E.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace

website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods bearing or using counterfeits and/or infringements of one or more of the MealMuse Marks and the [REDACTED] via the e-commerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto, and upon Plaintiff's request, any other listings and images of goods bearing or using counterfeits and/or infringements of one or more of the MealMuse Marks and the [REDACTED] associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the MealMuse Marks and the [REDACTED].

F.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of Defendants bearing or using one or more of the MealMuse Marks and the [REDACTED] in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

G.      Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

H.      Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendants in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

I. Entry of an Order requiring Defendants to account to and pay Plaintiff damages for patent infringement in an amount to be determined by the Court pursuant to 35 U.S.C. §§ 284 and 289 which shall in no event be less than a reasonable royalty.

J. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

K.      Entry of an award pursuant to 35 U.S.C § 285 of Plaintiff's reasonable attorney's fees.

L.      Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or

sub-accounts used in connection with the Seller IDs, or other alias seller identification or

e-commerce store names used by Defendants presently or in the future, as well as any

other related accounts of the same customer(s) and any other accounts which transfer

funds into the same financial institution account(s) and remain restrained until such funds

are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered

herein.

   M.  Entry of an award of pre-judgment interest on the judgment amount.

   N.  Entry of an Order for any further relief as the Court may deem just and

proper.

Dated: May 15, 2025       Respectfully submitted,

             */s/ Joel B. Rothman*_____
             JOEL B. ROTHMAN
             Florida Bar Number: 98220
             joel.rothman@sriplaw.com
             ANGELA M. NIEVES
             Florida Bar Number: 1032760
             angela.nieves@sriplaw.com
             DEBBIE C. YANG
             New York Bar Number: 6087050
             debbie.yang@sriplaw.com

             **SRIPLAW, P.A.**
             21301 Powerline Road
             Suite 100
             Boca Raton, FL 33433
             561.404.4350 – Telephone
             561.404.4353 – Facsimile

             and

             J. CAMPBELL MILLER
             Illinois Bar Number: 6345233
             campbell.miller@sriplaw.com

             **SRIPLAW, P.A.**

742 S. Rangeline Road
Carmel, IN 46032
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff MealMuse Corp.*